Good morning, your honors. Excuse me. If you need to bring water with you. No, I'm fine, thank you. Penny Fields for the appellants. I hope to reserve three minutes for rebuttal. The narrow question before the court is whether RCW 6644-270 is prohibitory, a prohibitory law that can be assimilated into the ACA or a regulatory law that cannot. And the universe of cases that give guidance on this question is quite small. Two decisions of this court, U.S. v. Marcius and U.S. v. Clark and the Supreme Court's opinion in Cabazon. And really the signposts that are there to guide us toward either a regulatory outcome or a prohibitory outcome are helping us to determine whether Congress really intended this statute to be assimilated. And ultimately the question here is whether the law is more like the gambling prohibition or the bingo prohibition in Cabazon or the fireworks prohibition in Marcius. And I'd like to start with Marcius briefly. Or the practice of law prohibition in court. And I'm going to talk about that as well. And I'd like to actually contrast that law in Clark to the Marcius case. In Marcius what was key to this court was that the entire overarching scheme prohibited the possession of dangerous fireworks with a couple of narrow exceptions within the scheme itself. In Clark, of course, this court said you can have a regulatory scheme and you can still pull out a specific penal provision or prohibitory provision and assimilate it. But in Clark you had a prohibition on the unauthorized practice of law which was flatly prohibited. It offered no exceptions whatsoever. And here in Marcius you have a scheme which has a couple of exceptions but is overall prohibitory. In Clark you have a provision that is prohibitory with no exceptions. Contrasted with our law here in Washington, you have a scheme which is not overall prohibitory. It regulates activity which is generally permissible and very widespread. But it's a blanket prohibition against sale to minors, which is a clear-cut public safety issue. That's in the specific provision. That's focusing on the specific provision. I understand that, but the nature of the law is itself plainly prohibitory and blanket. Yeah, well, it's not. No exceptions to that. Well, actually, the specific provision does have a number of exceptions, three, I believe, to the provision of alcohol for minors, and I think that distinguishes it from the provision at issue in Clark. In Washington, there's an exemption for a provision of alcohol to minors by parents for medicinal uses and religious ceremonies, I believe. So there are, they're limited, but there are some exceptions. In Clark, there is absolutely no exception to the unauthorized practice of law prohibition. And what I think is also interesting is in this distinction between prohibitory and regulatory is the overarching federal concern that regulatory law not be assimilated because it would not allow a state to just say, look, we're regulating or we're trying to protect the general health of the population, so we're going to penalize this conduct, and then they can just impose their regulatory laws on federal enclaves. Let me just, let's bring this down to the specific. I understand we have to look at the general overall, but what you're postulating is that federal military reservations, Fort Lewis, McCord, with young service people who are underage who, if they go off base, would not be able to buy alcohol and consume it, can go on base, buy and consume alcohol, can buy and go off base and enter into the general population and be underage drivers on the streets and highways. That's what the effect of your argument is, is it not? No, Your Honor. First, I would like to separate out the issue of driving or drunk driving, which is sort of obviously a public safety specter. Congress has incorporated all driving statutes, including DUI law by CFR, onto the federal enclaves, onto military bases. Moreover, I think the interesting thing is Congress here has... What do you mean they've incorporated it? Well, they've applied by CFR. They've basically said that states' driving scheme, driving law scheme, which includes all the regulations of licensing, speeding, driving under the influence, et cetera, apply in the federal enclaves. This is what I'd like to know. What is the consequence of the fact that there is actually a federal statute that says the secretary shall establish and enforces the minimum drinking age in a military installation, the age established by the state? And then there's a CFR that says the minimum age for purchasing, selling alcohol, et cetera, in air force bases must be consistent with the law of the state. So there doesn't seem... So you're separating out the question of whether there is a criminal violation, but as to what law applies. We know what law applies as a matter of federal specific law, not under the ACA. Is that not right? Well, I think the distinction I'm making is whether the law is prohibitory, which is... No, no. But what I'm asking you is the drinking age on military bases as a matter of federal law, not under the ACA, is the minimum age of the state. With exceptions. With exceptions. Yes. And that, I think, is an important distinction. Because in that same statute that I think you're referring to, Judge Brisanta, Congress has reserved to itself a great deal of power to regulate alcohol controls and alcohol use and the drinking age, et cetera. But at the same time, Congress has invested that, on military bases specifically, that power into base commanders. The Secretary of Defense who's given base commanders, like here, the authority to promulgate all manner of rules, all the regulatory rules, but at the same time to suspend the very drinking age regulations that you're talking about, at their discretion in some situations, which indicates that Congress has kept some control over this issue and has not given that power out to the states to apply their law there. And, in fact, if you assimilate, arguably, if you assimilated this prohibition on providing alcohol to minors, that would rob the base commanders of any ability to make that discretionary call, which Congress has clearly given them the power to do. And I think that's a big contrast between what happened in Marcius and what happened in Clark. There's no reservation of federal power. There's no ability to sort of tinker with the idea that you have to have a license to practice law. There was no reservation of federal power to the Indian reservation to decide, well, in some circumstances we're going to allow the possession of dangerous fireworks. There simply was no federal reservation of power, no federal exceptions, as there are here. I think that that's really important, because the overarching federal concern is what matters in determining whether a law is prohibitory and can be assimilated or regulatory and may not be assimilated. So is the net result of what you're saying that there is no way to prosecute people on bases? I gather you may be able to prosecute military people who sell to underage people, but not on military people at all. Well, actually, and that sort of speaks to the gap-filling purpose of the ACA and whether you can fill in where Congress hasn't spoken with criminal law. But the answer is no, because Congress has a number of other tools. First of all, through these regulations that base commanders promulgate, they can certainly regulate all their employees. There's also a statute, 50 App U.S.C. 473, which I apologize was not cited in the brief, where the Secretary of Defense has the authority to make it a criminal law, make regulations which have the force of criminal law governing the sale provision and trafficking and alcohol between military people, either by military people or to military people. It has the force of criminal law, meaning it's a federal crime? It would be a misdemeanor. A federal misdemeanor? Yes, apparently. So just so I understand, if a civilian, if you have an enlisted personnel as a bartender and a civilian bartender, civilian employee bartender, same bar, one sells to a minor, both sell to minors, what's the liability for each of them? Well, if they promulgated regulations under the statute I just mentioned, I believe it would depend on whether the civilian sold to a minor service member and I think it would, the military person. Let's assume they sold to a military person. They would both be equally liable. Liable under what law? Under the regulations that would be promulgated. So your clients could have been subjected to liability for illegal underage sales at McCord if a regulation had been passed saying that you cannot do that on military reservation? Presumably. And that's just like the situation in Carlson, this Court's decision, where this Court said that the driving provision couldn't be enforced under the ACA, but it could have been enforced under the CFR that had been put in place, applying it to the military base there. And finally, Congress is also always free, given how it's expressed this intent to hold on to so much power on regulation of alcohol use, to promulgate a CFR just as it did with the driving regulations and apply all of these statutes to federal enclaves if that's what it intended to do. Well, it did do that. It did apply all the statutes to federal enclaves, but it didn't. You're saying what it didn't do was make it criminal. I'm sorry. It did apply the substantive rule to all the military bases. Under the ACA? No, under the statute that I read you before that says that on military bases. Right. Right. So it did substantively do that. But at the same time, and sort of tinker with the prohibitions there, giving base commanders that power, discretionary power, which would be taken away under this statute. We got it. You're over time, and I'm going to give you a minute for a bottle. So rather than have you run on, I want to hear from the government. Thank you. Thank you. Would you address first this issue? Let's let him announce who he is. Thank you, Your Honor. If it may please the Court, Arvind Swaminathan for the United States Government. All right. Would you address first this issue Ms. Fields raised about the Secretary of Defense has the authority by regulation to criminalize, at least in a misdemeanor sense, the conduct of civilian employees on the military base? Right. Are you aware of that? I'm aware of that, Your Honor. Here's what the import of that is. It really has no import. Because in Sousa, what the Court, what this Court says, was that the issue was whether any enactment of Congress, any federal regulation or statute essentially constitutes, punishes that same conduct. This is not a case where that's true. While Congress may have the ability to promulgate CFRs, while base commanders may have the ability to promulgate regulations, that's not what that was the case in this instance. So that Congress may or may not have reserved power to do something is irrelevant in this case. What we have to look at for the first part of the inquiry in determining whether or not the ACA is applicable is to look at whether there's a federal regulation or a congressional statute that punishes the conduct of the issue. So you're saying this reserved power is really irrelevant to, you know, what's proper under the ACA, right? If the power hasn't been exercised. That's correct, Your Honor. What about the exception issue? The regulations do in fact have two exceptions. One is that the minimum drinking age can be lowered to match that of the laboring state and the other is that for a unique or non-return military occasion, I assume that means victory in Europe or something, you can have the minimum drinking age for a particular unit. It can be lowered. So if that happens, then what happens? In other words, I assume nobody can be convicted under a state law where those rules are in effect for selling underage. So does that throw a big hole in the applicability of the state law? Well, Your Honor, those two exceptions as I read them apply to military personnel. They don't apply to civilians selling or furnishing alcohol to minors. And so there really isn't that situation. That wouldn't make any sense because what it says is that the minimum base drinking age may be lowered. So you mean to say that if the minimum base drinking age has been lowered, that if you have a military person selling it, they can sell in accord with the minimum base drinking age, but civilian people on the same base can't abide by that rule? Well, Your Honor, that's how I would read it. And that's how I would read it is that military personnel could do that, but it would not undermine the application of the Washington Statute. Even if it did, Your Honor, even if it did apply to civilians and military personnel equally and they wouldn't be able to prosecute, that would be an instance where the conduct that is prohibited issue would be we would be dealing with exception upon exception essentially. And that would be an instance where a regulation applied, but that's not a congressional regulation that would address the conducted issue. It's a base regulation that's promulgated. It's not a CFR and it's not anything passed by Congress. So in that instance, we really wouldn't have a situation where the ACA would not allow the state law to apply. I seem to have confused Your Honor. It's just an extremely difficult thing to understand how you can have a criminal law that makes something criminal for a civilian on the base even though the statutes, in fact the minimum base drinking age on that base is lower. It's what she's doing. I don't say it's hypothetical. It doesn't seem to apply to this, but it seems to be relevant to whether this is really prohibitory. I don't think it's relevant to whether or not this is prohibitory because I think the inquiry in determining whether or not a law is prohibitory or regulatory is outlined in Marcy's and Clark, which is what Judge Fischer said at the beginning of the arguments, which is shouldn't we look at and the court should look at, A, whether the statute in question prohibits conduct and whether it does so to promote a public good. In the instance of this statute, this Washington statute that prevents or prohibits the furnishing of alcohol to minors, that is a prohibitory statute in nature and its intent is to promote the public welfare. That's what the Supreme Court said in Schooley, was that it's to protect minors from basically the ills of themselves because they can't drink responsibilities to protect their health and safety and it's to protect the public from the particular hazards that arise when minors are given alcohol. So in that sense, Your Honor, that's the inquiry that determines whether this statute is prohibitory or regulatory and it answers the question whether or not it can be assimilated under the Assimilated Crimes Act. Defense counsel made a point that I wanted to... Just one more question. In Clark, there was no parallel to the override authority that exists on the military base. In other words, there was nothing in Clark that indicated that... Was that a military base in Clark? Yes, Your Honor. That the base authorities could say, all right, on our base it's okay to practice law without a license, right? I don't know the answer to that. I don't know what the military regulations on the base were and whether or not someone could or could not practice without a license under certain exceptions. I just don't know the answer to that, Your Honor. Defense counsel raised a distinction between Clark and Marseilles and the one thing I do want to point out is Marseilles is really on point in this case in the sense that even though there are exceptions to the Washington state law, those exceptions in Marseilles are consistent. Excuse me. Let me rephrase that. Even though there are exceptions in this case under the Washington state law, that's the same kind of framework that we had in Marseilles, that essentially a prohibitory statute can have exceptions and still be prohibitory. So when the court looks at what the most analogous case is to the statutory framework we have here, the court should look to Marseilles first because that is a statute that prohibited conduct with exceptions, which is similar to what we have here. So for those reasons, Your Honor, because the inquiry begins and ends with what Clark and Marseilles said, the intent of the statute and whether or not it's promoting a public good, we would advise the court that it should affirm the district court's order and affirm the convictions of both the defendants. Can I ask you a question to follow up on what I asked Ms. Fields? The hypothetical where you have under her theory, she said you have the authority, the military has the authority to control this by if you have the civilian and the enlisted bartender side by side both selling to military personnel, that that can be addressed under the authority of the regulatory power. Is that correct? I'm not sure, Your Honor, I understood exactly what the hypothetical was. Well, the hypothetical is just you've got two bartenders working the bar and you've got a 17-and-a-half-year-old buck private coming in or whatever they are enlisted. When I was in the Army, it was buck private, EM3s or whatever. They're selling to underage kids who, as I understand it, the military can punish the military bartenders. And she said that, as I understand it, that you can punish the civilian bartender as well, but you have to adopt regulations to do that. Is that correct? I think that's correct, Your Honor. I think that's correct, but I think the point of the Washington law is and the underlying purpose of the ACA is to bring consistency of approach to that, which is to be able to apply the same criminal provisions to both the military bartender as well as the civilian bartender. So that the state law purposes of, say, public safety, can be not left to the discretion of the base commander? That's correct, because Congress, in passing the ACA, recognized that there is a driving interest and an important interest in making sure that a state's laws are applied uniformly to all of its citizens. And it does that to avoid creating the very loophole that Your Honor describes, as well as having non-military personnel who may be on a military base and obtaining alcohol. This is somewhat outside the scope of the limits of this case, but could you, if it were a military person doing it, could you apply the state law or could you only apply the uniform military conduct? My understanding is that you could apply the state law. Or the military law. Or the military law. That's my understanding, Your Honor. But there would be discretion at that point as to whether or not to prosecute that person or to treat them under the regulations.  Prosecute a military person for doing it. Prosecute them because they are complying with the exception under the regulation, but also committing a crime under Washington state law. Your Honor, I don't know the answer to that question. It's not one that we addressed in this issue because it wasn't at the forefront. It wasn't one that was raised by this case, and so we haven't addressed that. And I don't know the answer to that, Your Honor. Thank you. Thank you. Thank you. Ms. Fields, I said I'd give you a minute. Thank you, Your Honor. Your Honor, I just want to address the point that reservation of power by the federal government is relevant here because it's evident of whether assimilation here fulfills the ACA's intent, gap-filling and uniformity. Uniformity is defeated by assimilation here as long as Congress has reserved the power to give discretion that we talked about to base commanders. Moreover, looking just at the state statute, I think this Court's jurisprudence has made clear that just because a provision is prohibitory or even penal and the stated purpose is promoting the general health and welfare, that is not enough to require assimilation. A much broader analysis is required to protect the federal concern. And just looking at the Washington law really quickly, in the same title in another chapter, 6628-230, under the heading of miscellaneous regulatory provisions, there is a prohibition, a provision that prohibits giving kegs to minors, and it incorporates the same exceptions as our provision that's at issue here and provides the same penalties. So that, to me, is further evidence of its regulatory nature, as is Congress' reservation of power here. Giving what to minors? I'm sorry? Giving what to minors? Kegs, beer. K-E-G. Kegs with beer in them. Thank you. Thank you. And you're pro bono, I understand. Well, the Court always appreciates our pro bono counsel, so thank you. It's an interesting case, so thank you both. The case is submitted.
judges: Tashima, Fisher, Berzon